**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| THE ARBITRAGE FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>THE TORONTO-DOMINION BANK, *et al.*<br><br>Defendant. | Civil No. 23-2763 (RBK/AMD)<br><br>**OPINION** |
| Andrew AMICARELLI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>FIRST HORIZON CORPORATION, *et al.*<br><br>Defendant. | Civil No. 23-3024 (RBK/AMD) |

**KUGLER**, United States District Judge:

This securities litigation class action comes before the Court on the Motion of the Institutional Investors[1] for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (ECF No. 17); the Motion of Eric Tucker for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel (ECF No. 18); and the Motion of the Water Island Funds for Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Consolidation of Related Action (ECF No. 19). In a parallel proceeding to be

---

[1] The "Institutional Investors" include the Westchester Funds, the Pentwater Funds, the Sand Grove Funds, and the Alpine Funds. (ECF No. 17 at 1).

1

consolidated, the Water Island Funds also brought a Motion for Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Consolidation of Related Action. (Case No. 23-3024, ECF No. 24). The Water Island Funds subsequently withdrew their motions in both actions. (Case No. 23-2763, ECF No. 30; Case No. 23-3024, ECF No. 24). For the reasons stated herein, the Institutional Investors' and Tucker's motions to consolidate are **GRANTED**, Tucker's Motion for Appointment as Lead Plaintiff and to Consolidate Actions is **DENIED** in part and **GRANTED** in part, and the Institutional Investors' Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel is **GRANTED**.

## I. THE FACTS

This is a federal securities class action brought on behalf of a class consisting of all persons and entities who purchased or otherwise acquired securities of First Horizon Corporation ("First Horizon") between February 28, 2022 and May 3, 2023 ("the Class Period"). Plaintiffs seek to recover damages caused by Defendants' alleged violations of federal securities laws and bring this action under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5. The complaints allege that Defendants made materially false and misleading statements regarding an agreement for Toronto-Dominion Bank ("TD Bank") to acquire First Horizon, causing losses and damages among the holders of First Horizon securities.

A class-action complaint was first filed with this Court on May 22, 2023 on behalf of Plaintiff The Arbitrage Fund, an investment fund which had purchased First Horizon securities during the Class Period. A subsequent class-action complaint, concerning essentially the same subject matter, class, and allegations was filed on behalf of one Andrew Amicarelli on June 1, 2023. Amicarelli is a putative class member who acquired First Horizon securities during the Class Period.

On July 21, 2023, the Institutional Investors moved to appoint lead plaintiff in the *Arbitrage Fund* action, and also moved to consolidate the two actions. On the same date July 21, Tucker also moved to appoint lead plaintiff in the *Arbitrage Fund* action and to consolidate the actions. Additionally, on the same date, the Water Island Funds moved to appoint lead plaintiff in both actions and to consolidate the actions.

On July 31, 2023, Tucker submitted notice that he was not opposing the Institutional Investors' appointment because the Institutional Investors had taken greater losses than Tucker. (ECF No. 21). Similarly, on August 1, 2023, the Water Island Funds withdrew its motion to appoint lead plaintiff. (ECF No. 22). The Institutional Investors claim losses totaling $225,290,571.00, much larger than the Water Island Funds' losses of $31,207,929.00 and Tucker's losses of $151,156.00. We are unaware of any losses greater than those claimed by the Institutional Investors.

## II.  CONSOLIDATION

If actions before a court involve a common question of law or fact, the court may consolidate the actions. *See* Fed. R. Civ. P. 42(a). Rule 42 "confers upon a district court broad power, whether at the request of a party or upon its own initiative, to consolidate causes for trial as may facilitate the administration of justice." *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964). In like manner, the Private Securities Litigation Reform Act ("PSLRA") "directs that cases should be consolidated where there is 'more than one action on behalf of a class asserting substantially the same claim or claims.'" *In Re Lucent Techs. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Where there are multiple class actions filed under the PSLTRA, a court shall not appoint lead plaintiff until after it decides the motion for consolidation. § 78u-4(a)(3)(B)(ii).

Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated. Rather, in deciding whether to consolidate actions under Rule 42(a), it must be considered

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, lawsuits, the length of time required to conclude multiple lawsuits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001) (citing *In re Consolidated Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) (citations omitted).

The *Arbitrage Fund* and *Amicarelli* actions before this Court involve essentially the same causes of action, with the same class, concerning the same events. *Arbitrage Fund* alleges a class who had purchased or otherwise acquired securities between February 28, 2022 and May 3, 2023, and was injured by alleged material misrepresentations; so does the *Amicarelli* action. The *Arbitrage Fund* action alleges claims under Section 10(b) and 20(a) of the Exchange Act; so does the *Amicarelli* action. The two actions are brought against slightly differing sets of defendants, although both actions are brought against Defendants TD Bank, Bharat B. Masrani, and Leo Salom. The Court thus finds that consolidation is appropriate and would facilitate the administration of justice, and grants the Institutional Investors' and Tucker's motions for consolidation of the *Arbitrage Fund* and *Amicarelli* actions.

### III.   APPOINTMENT OF LEAD PLAINTIFF

Both the Institutional Investors and Tucker seek to be appointed lead plaintiff in this action, although Tucker does not oppose the Institutional Investors' motion because their losses are significantly higher than Tucker's. But while the Institutional Investors' motion is effectively unopposed, "[a] preliminary, fact-specific inquiry is nonetheless necessary under Rule 23 to

4

determine whether the presumptively most adequate plaintiff will nevertheless betray the interests of the class." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999).

The PSLRA provides that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(i). As relevant,

(I) In general. . . . the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

(II) Rebuttal evidence. The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff —

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

§ 78u-4(a)(3)(B)(iii).

As stated in subsection (a)(3)(I)(cc), the "most adequate plaintiff" must also satisfy the requirements of Federal Rule of Civil Procedure 23:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

  (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

  (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

*In re Cendant Corp. Litigation*, 264 F. 3d 201 (3d Cir. 2001) outlines the steps a court must follow in appointing lead plaintiff as required under 15 U.S.C. § 78u-4(a)(3)(B) and Federal Rule of Civil Procedure 23(a). The Court applies that analysis here.

### A.  The Largest Financial Interest Requirement

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status. The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendent*, 264 F.3d at 262. "The Third Circuit has concluded that [the] 'largest financial interest' means the largest loss." *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 567 (D.N.J. 2006) (citing *In re Cendent*, 264 F.3d at 223). In making this determination, "courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." 264 F.3d at 262.

  The Institutional Investors sustained a loss of approximately $225.2 million on transactions made during the Class Period in First Horizon securities. By contrast, Tucker suffered a loss of $151,156, while the Water Island Funds suffered a loss of approximately $31.2 million. Based on the information before the Court, we find that the Institutional Investors have the largest financial interest in the relief sought by the class.

### B.  Rule 23 Requirements

"Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." *In re Cendent*, 264 F.3d at 263-264 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (cc)). This "inquiry . . . should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy." *Id*. This assessment "should be a product of the court's independent judgment," but "need not be extensive." *Id*.

"In conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." *Id*. "When making these determinations, courts should apply traditional Rule 23 principles." *Id*.

> [I]n inquiring whether the movant has preliminarily satisfied the typicality requirement, they should consider whether the circumstances of the movant with the largest losses "are markedly different or the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based."
>
> In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class."

*Id. (*alterations in original) (quoting *Hassine v. Jeffes*, 846 F.2d 167, 177, 179 (3d Cir. 1988)). "In making the initial adequacy assessment in this context, courts should also . . . inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *Id*. Furthermore, when the plaintiff is a group, as here, "[i]f the court determines that the way in which a group seeking to become lead

7

plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id.* at 266. Courts should also consider whether a movant group is too large to adequately represent the class, and should consider any other reasons indicating the adequacy or typicality requirement has not been satisfied. *See id.* at 268.

The Institutional Investors' claims are typical of the class. The typicality requirement is satisfied when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues. *Blake Partners, Inc. v. Orbcomm, Inc.*, 2008 WL 2277117, at *6 (D.N.J. June 2, 2008) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 809 & n.36 (3d Cir. 1984)). The Institutional Investors' claims are based on the same legal theory and arise from the same events and course of conduct as the claims of the class. As a securities action, the parties are affected by the same event; the crux of this case will be Defendants' alleged misrepresentations and omissions during the Class Period. Nothing suggests the Institutional Investors' case will be uniquely affected by this inquiry. We therefore find that the Institutional Investors satisfy the typicality requirement of Rule 23.

As to adequacy, the Institutional Investors appear to have both the ability and incentive to represent the purported class vigorously. Further, the Institutional Investors have obtained what this Court finds to be adequate counsel experienced in federal securities litigation with a record of favorable verdicts for clients in the past. Bernstein Litowitz Berger & Grossman LLP and Saxena White P.A. are highly qualified and experienced in the areas of securities class action and demonstrate a record of effectively prosecuting complex securities class actions. Additionally, proposed Liaison Counsel Carella, Byrne, Cecchi, Brody & Agnello, P.C. maintains an office in

the District of New Jersey and has substantial experience litigating class actions. Finally, there does not appear to be a conflict between the Institutional Investors' claims and those of the purported class; the Institutional Investors have affirmed their commitment to satisfying the fiduciary obligations of Lead Plaintiff and to ensuring that the litigation will be vigorously prosecuted. At this stage of appointing lead plaintiff pursuant to the PSLRA, we therefore find that the Institutional Investors satisfy the adequacy requirement of Rule 23.

### C. Presumption Not Rebutted

"Once a presumptive lead plaintiff is located, the court should then turn to the question whether the presumption has been rebutted." *In re Cendent*, 264 F.3d at 268. However, "[i]f no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff." *Id.* There is presently no challenge to the appointment of the Institutional Investors as lead plaintiff. Accordingly, the presumption of adequacy stands. *See, e.g.*, *In re Party City Sec. Litig.*, 189 F.R.D. at 112 ("Absent such a challenge, the presumption of adequacy will generally survive."); *Zuckerman v. Foxmeyer Health Corp.*, No. 96-2258, 1997 WL 314422, at *2 (N.D. Tex. Mar. 26, 1997) ("No purported class member has presented evidence to rebut this presumption. Therefore, the Court will appoint the movants as lead plaintiffs.").

As the Institutional Investors appear to have the largest financial interest, have satisfied the Rule 23 requirements, and the presumption that the Institutional Investors are the most adequate plaintiff has not been rebutted, the Court will appoint the Institutional Investors as lead plaintiff in this consolidated action.

### IV. APPOINTMENT OF LEAD COUNSEL

Finally, the Court addresses the appointment of lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." As the Court finds the Institutional Investors are the most adequate plaintiff, this task falls to them. The Institutional Investors move for approval of the firms Bernstein Litowitz and Saxena White as lead counsel for the class. While the motion to approve the firms as lead counsel is unopposed, this Court has a separate, independent obligation to assess the Institutional Investors' selection of counsel on behalf of the class.

There is "a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Cendant Corp. Litig.*, 264 F.3d at 276. "When a properly-appointed lead plaintiff asks the court to approve its choice of lead counsel and of a retainer agreement, the question is not whether the court believes that the lead plaintiff could have made a better choice or gotten a better deal." *Id.* Rather, "the court's inquiry is appropriately limited to whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Id.* The Third Circuit considers the following factors in deciding whether the selection of lead plaintiff's counsel is appropriate:

> (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

*Id.* at 276.

Bernstein Litowitz and Saxena White have significant experience working together to prosecute securities class actions, including in the District of New Jersey. Bernstein Litowitz is a prominent securities class action firm and has extensive experience serving as lead counsel in

securities class action. Bernstein Litowitz has previously been recognized in this District as adequate and qualified class counsel in securities class actions. *See, e.g.*, *In re Schering-Plough Corporation/ENHANCE Litigation*, No. 08-cv-397 (D.N.J.); *In re Merck & Co. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177 (D.N.J.); *In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9449 (D.N.J.). Saxena White has likewise achieved recoveries on behalf of investor class in securities class actions in the District of New Jersey and throughout the country. Saxena White has also researched and developed the claims in this litigation. Finally, proposed Liaison Counsel Carella Byrne has previously served as liaison counsel in securities class actions in this District. *See, e.g.*, *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 2:05-cv-01151 (D.N.J.); *In re Schering-Plough Corporation/ENHANCE Litigation*, No. 08-cv-397 (D.N.J.).

The Court is satisfied that the Institutional Investors' choice of counsel comports with a good-faith selection and negotiation process. We therefore approve Bernstein Litowitz Berger & Grossman LLP and Saxena White P.A. as lead counsel for the class. We also approve Carella, Byrne, Cecchi, Brody & Agnello, P.C. as liaison counsel for the class. The motion is granted.

### V.     CONCLUSION

For the reasons stated herein, the Institutional Investors' motion is **GRANTED**. Tucker's motion is **GRANTED** in part and **DENIED** in part. The Water Island Funds' motion to withdraw motion is **GRANTED** and motion to appoint lead plaintiff and consolidate actions is **DISMISSED**. An order follows.


Dated: August 29, 2023                                             /s/ Robert B. Kugler
                                                                   ROBERT B. KUGLER
                                                                   United States District Judge